## 12488.   REED OIL COMPANY *v.* SMITH.

A careful examination of the record discloses no error of law, and sets out sufficient evidence to support the verdict.

DECIDED OCTOBER 7, 1921. REHEARING DENIED OCTOBER 24, 1921.

(Certiorari was granted by the Supreme Court.)

Action for damages; from city court of Atlanta — Judge Reid. April 16, 1921.

Mrs. E. S. Smith sued the Director-General of Railroads, the Western & Atlantic Railroad Company, and the Reed Oil Company, for damages on account of the death of her minor son. On demurrer the trial court struck the Western & Atlantic Railroad Company as a defendant, and the case proceeded to trial against the Director-General and the Reed Oil Company. At the conclusion of the evidence a nonsuit was awarded as to the Director-General of Railroads, and this judgment was affirmed by this court. *Smith* v. *Payne,* 26 *Ga. App.* 685 (107 S. E. 70). On the trial of the case against the Reed Oil Company alone the jury found a verdict for $7,000. The defendant's motion for a new trial was overruled, and the case came to this court on exception to that judgment.

The material parts of the evidence, which are not in conflict, make the following case against the Reed Oil Company: In January, 1918, that company ordered from the Motor Gas Company, located in Muscogee, Okla., several tank-cars of gasoline, and in February thereafter the Western & Atlantic Railroad Company received two tank-cars of gasoline from the consignor,

C. O. S. X. 1470 and C. O. S. X. 1459, for delivery to the Reed Oil Company in the city of Atlanta. One of these cars, to wit, C. O. S. X. 1470, was subsequently found to contain a gasoline fluid known as casing head gas, which was exceedingly unstable and volatile, vaporizing and disintegrating rapidly, pouring off fumes and vapors which were exceedingly combustible when escaping and easily carried by the winds for several hundred yards or more. This car was brought to Atlanta by the Western & Atlantic Railroad, which was then being operated by the Director-General of Railroads, and placed on the track of that railroad within a few feet of the rear of a building occupied by one Thomas, in which was an open furnace where a fire was burning day and night, and the dome of this tank-car was within about five feet of the rear of the building and about ten feet or less from the open furnace containing the fire. While the tank-car was in this situation an employee of the Reed Oil Company, acting under instructions of R. N. Reed, its president, went upon the top of the tank-car for the purpose of getting samples of its contents for inspection and delivery to the State authorities, under the law. A safety valve was on each side of the cap or dome covering of this car, for the purpose of being used in ascertaining the contents of the car and detecting the presence or absence of vapor pressure, if any, in the car. This employee succeeded in opening one of the safety valves, but could not open the other. He thereupon took up an iron bar, and with this instrument forcibly hammered and unscrewed the dome cover and removed the cap thereof. Immediately upon this removal a quantity of vapor escaped and was carried by the wind into the vulcanizing plant of Thomas, coming in contact with the fire in the open furnace, and an explosion resulted which wrecked and destroyed the building of Thomas and killed both him and the plaintiff's son, who at the time was in the plant on a matter of business with Thomas. The car in question — 1470 — was properly labeled, according to the rules and regulations of the interstate-commerce commission, showing that it contained gasoline, which rules and regulations contained direction that the car be kept away from fires, stoves, radiators, or lighted matches and direct sunlight, and admonished the carrier to see that all precautions were taken to prevent accidents and to quickly iso-

late the car in case of fire. It was charged in the petition and shown by the evidence that the rules and regulations of the interstate-commerce commission expressly prohibited any person from beating or hammering upon the cap or dome of any gasoline car or railroad car which contained gasoline, and required a person, before opening any car containing gasoline fluid or mixture, to test the contents of the cars by means of the safety valves and ascertain what the pressure was therein, so as to determine whether or not the opening of the car would be dangerous.

In sixteen different paragraphs the petition alleged negligence. In view of the disposition of the case as to the other two defendants it is only necessary to state those allegations which refer to the act and conduct of the Reed Oil Company, either as sole tort-feasor or as a joint tort-feasor. Summarizing these allegations they allege that the oil company was negligent (1) in instructing its agent to enter the premises and to open and inspect the contents of the tank-car while the car was adjacent to the vulcanizing plant containing the open furnace with fire, the company, through its president, as well as through its employee who attempted to make the inspection, having full knowledge of the nearness of said vulcanizing plant containing fire; (2) in giving its employee, through the president of the company, instructions to take the cap of the dome off the car while it was so near to the building containing the fire, of which both the president and the employee had notice; (3) in permitting any employee of the defendant company to inspect the contents of the tank-car by unscrewing the cap of the dome without having ascertained the absence of vapor pressure through the valves provided for that purpose, in distinct violation of the rule of the interstate-commerce commission; (4) in opening, through the act of its employee, the dome of the car containing gasoline, without first removing the car from the proximity of the fire. The oil company, before the trial upon the merits, presented general and special demurrers to the petition, all of which were overruled, and exceptions pendente lite were duly preserved.

Besides the general grounds, the motion for a new trial contains the following special grounds: (1) Because, at the conclusion of the evidence of both plaintiff and defendant, this defendant desired to and did make a motion for the direction of

a verdict in favor of the defendant. The following colloquy occurred between the court and counsel for the Reed Oil Company: "The court: 'Proceed with the argument for the plaintiff.' Mr. Neufville: 'I have a motion, your honor.' The court: 'I will overrule it.' This took place in the presence of the jury and while the said jury was in the box. The defendant contended that the counsel for the Reed Oil Company had a right to be heard on the motion to direct a verdict, and the overruling of the motion, without allowing counsel to state the grounds of the motion, was error and prejudicial to the right of the defendant." (2) Objection was made to the following excerpt from the charge of the court: "The defendant specifically contends that it had a right to go on this car, by its agent, for the purpose of obtaining samples of the contents, to be submitted to the State inspector of gases and oils. Well, under the undisputed evidence in this case it appears that this car was shipped by the shipper not to the Reed Oil Company, but to itself, under what is designated as an 'order notify' bill of lading — that is, it retained the title to the car of gas and drew a draft with the bill of lading attached, to a bank in the city, with direction to the railroad company, or to the Director-General, to notify the Reed Oil Company. That sort of shipment is called ordinarily an 'order notify' shipment, and under it the Reed Oil Company did not have the right to take possession of this car for any purpose without first having paid the draft, or without having obtained permission from the shipper. Under the law covering such shipments the Reed Oil Company would not have had such right." It is insisted that this portion of the charge was tantamount to the direction of a verdict for the plaintiff. Several other grounds of error are set out in the motion, which it is deemed unnecessary to set out in this statement.

*Neufville & Neufville,* for plaintiff in error.

*Virlyn B. Moore, Hewlett & Dennis,* contra.

HILL, J. (After stating the foregoing facts.) 1. No error appears in the rulings of the trial court on the demurrers filed to the petition. The allegations of the petition clearly, fully, and distinctly set forth a cause of action against the Reed Oil Company, either severally or jointly with the other two defendants, and were entirely sufficient to withstand a general demur-

rer, and there was no merit in any of the special demurrers of that company.

2. The colloquy between the court and counsel, set out. in the motion for a new trial, was not cause for a new trial. Trial judges have the right to overrule motions without hearing argument, if they do not desire to hear argument. While the overruling of the motion to direct à verdict for the defendant, without hearing argument in support of the motion, may have tended to prejudice the case of the movant before the jury, such prejudicial consequence must be attributed to the conduct of the attorney in making the motion in the presence of the jury. Any prejudicial effect from the ruling on a motion can be easily prevented by counsel. before he presents the motion to the court, by requesting that the jury be ordered to retire while the motion is being submitted or argued.

3. The charge of the court in effect that the defendant oil company was not authorized to take possession of the car in question for any purpose without first having paid the draft or without having obtained the permission of the shipper, the shipment being what is ordinarily called an " order notify" shipment, was correct. *Southern Ry. Co.* v. *Hodgson Brothers Co.,* 148 *Ga.* 851 (98 S. E. 541) ; *Southern Ry. Co.* v. *Massee & Felton Lumber Co.,* 23 *Ga. App.* 309 (98 S. E. 106) ; *Merchants & Miners Transportation Co.* v. *Moore,* 124 *Ga.* 482 (52 S. E. 802).

4. The refusal to give the requested instructions was not erroneous for any of the reasons stated; the charge having fully and correctly applied the law to the facts of the case.

5. This leaves in the case only the main question, as to whether there is evidence in the record sufficient to support the verdict. The negligence alleged against the Reed Oil Company, upon which the verdict is probably based, was, first, the act of the president instructing its employee to take possession of the tank-car and inspect the contents before it was delivered by the railroad company in accordance with the bill of lading, and the manner in which that unauthorized act was performed by the employee. The evidence is undisputed that in attempting to enter the car and find out its contents this employee violated the express order of the interstate-commerce commission that " the dome cover should not be hammered and should not be unscrewed

until the absence of vapor pressure in the tank is verified by lifting the safety valve." The employee himself testified that, being unable to lift the safety valve, he took a piece of iron and hammered and loosened the cap of the dome, permitting the vapor to escape. While this court is of the opinion, as before ruled, that the defendant had no right to take possession of this car at all, under the facts, or to make an inspection of its contents in any manner or for any purpose, in view of the fact that the car had not been delivered to the oil company in accordance with the bill of lading, yet it must be admitted that the method of entering the tank-car, in violation of the express rule of the interstate-commerce commission, constituted negligence which imposed upon the oil company responsibility for all of the reasonable, natural, usual, and ordinary consequences. From this evidence the jury were authorized to find that the vapor would not have escaped, with the resulting damage, except for this negligent act of the employee of the company. Even, therefore, conceding, as contended by the plaintiff in error, that the act of the shipper in loading this highly volatile and inflammable gas into the tank-car, in violation of the instructions of the consignee and without notifying either the railroad or the consignee of that fact, constituted negligence, yet the jury could have inferred that the intervening agency, which did in fact cause the death of the plaintiff's son, and permitted the gas to escape from the tank-car, was due to the negligent conduct of this employee. However negligent the act of the shipper may have been, it would have been harmless but for the negligent act of the oil company through the conduct of its employee. Whether, if the tank-car had been loaded with ordinary gasoline, this negligent conduct would have itself caused the explosion is a matter of pure speculation. But the orders and rules of the interstate-commerce commission clearly indicate that gasoline of any sort is dangerous when in the proximity of an exposed flame. The tank-car was within about five feet of the vulcanizing plant, which contained an open furnace, itself only about ten feet from the car, and according to the testimony of the president of the defendant, as well as the employee in question, both had knowledge of the proximity of the fire to the car. The case having been fully and fairly submitted to the jury after an able and ex-

haustive charge, and there being evidence to support the verdict against the defendant oil company, the judgment overruling the motion for a new trial is affirmed.

*Judgment affirmed. Stephens, J., concurs. Jenkins, P. J., disqualified.*